# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00446-CV

**In the Matter of D. M.**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT
### NO. 03-358-J277, HONORABLE BURT CARNES, JUDGE PRESIDING

## O P I N I O N

D.M. set fire to a couch, which caused extensive damage to his school. The trial court ordered D.M.'s parents ("appellants") to pay $25,000 in restitution as part of its order of probation. *See* Tex. Fam. Code Ann. § 54.041(b) (West Supp. 2005). Appellants appeal the order, arguing that there was insufficient evidence to support the amount of restitution ordered and that the statutes governing restitution are unconstitutional because they violate the "open courts" provision of the Texas Constitution and violate due process. *See* Tex. Const. art. I, § 13. We will affirm the order of the trial court.

### STATUTORY FRAMEWORK

Before addressing the merits of appellants' arguments, we will review the framework governing restitution in juvenile proceedings. The juvenile justice code, located in the family code,

was enacted for several reasons including the desire "to promote the concept of punishment for criminal acts" and "to protect the welfare of the community and to control the commission of unlawful acts by children." Tex. Fam. Code Ann. § 51.01(2)(A), (4) (West 2002). The code emphasizes that both the parents and the child are responsible for the conduct of the child. Section 51.01(2)(C) states that one of the goals of the juvenile justice code is to provide "rehabilitation that emphasizes accountability and responsibility of both the parent and the child for the child's conduct." *Id.* § 51.01(2)(C) (West 2002). Further, the code was enacted "to provide a simple judicial procedure through which the provisions of this title are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced." *Id.* § 51.01(6) (West 2002).

Juvenile delinquency proceedings, although considered civil proceedings, are quasi-criminal in nature. *In re M.S.*, 985 S.W.2d 278, 280 (Tex. App.—Corpus Christi 1999, no pet.); *In re J.R.*, 907 S.W.2d 107, 109 (Tex. App.—Austin 1995, no pet.). Portions of juvenile proceedings are governed by the rules of criminal proceedings including the State's burden of proof, the right to trial by jury, the privilege against self-incrimination, the right to trial and confrontation of witnesses, and confessions. *In re J.R.*, 907 S.W.2d at 109.

As part of a delinquency determination, the court is allowed to consider what amount of restitution, if any, should be paid to the victim of the crime committed by the juvenile. Tex. Fam. Code Ann. § 54.041 (West 2002 & Supp. 2005). The code allows restitution to be *issued against* the juvenile or *the parents* of the juvenile. *Id.* § 54.041(b). However, the maximum amount of restitution that parents may be required to pay as a result of their child's wilful and malicious

2

conduct is $25,000. *Id.* § 41.002 (West 2002). Further, the restitution ordered must promote the rehabilitation of the child. *Id.* § 54.04(b) (West 2002 & Supp. 2005). If the court finds that the parents have made "reasonable good faith efforts" to prevent their child from engaging in delinquent behavior, the court shall waive any requirement that the parents pay restitution. *Id.* § 54.041(g).

Because juvenile cases are quasi-criminal, the rules pertaining to restitution in criminal cases apply to juvenile cases. *In re M.S.*, 985 S.W.2d at 280. The trial court has broad discretion in determining the amount of restitution. *Long v. State*, 7 S.W.3d 316, 323 (Tex. App.—Beaumont 1999, no pet.). However, the amount of restitution that may be ordered is limited to the actual damages sustained. *See* Tex. Fam. Code Ann. § 54.041(c). Further, the amount of restitution awarded must be "just," meaning it must be supported by sufficient factual evidence in the record that the expense was incurred, but there is no requirement that the injured party prove that the amount of expense incurred was reasonable. *In re J.R.*, 907 S.W.2d at 109.

**BACKGROUND**

At the time of the appeal, D.M. was a thirteen-year-old boy who had previously been diagnosed with Attention Deficit, Hyperactivity Disorder ("ADHD") for which he had taken various medications for years. As a result of his diagnosis, D.M. was eligible for special education services and had been enrolled in modified classes for behavior management in public school. In early November 2003, D.M. was taken off of his ADHD medications by his physician and was placed on anti-depressants.

On November 10, 2003, D.M. set off a fire alarm at school. After the incident, D.M. was temporarily placed in an alternative program outside of his school. An admission, review, and

3

dismissal meeting occurred,[1] and the committee concluded that D.M. should return to his previous school.

On December 2, 2003, the day after he returned to his normal school schedule, D.M. set fire to a couch inside the school, which caused over $100,000 in damage to the school.[2] When D.M.'s locker was searched, nearly empty bottles of rubbing alcohol and nail polish remover as well as a can of disinfectant spray and a lighter were discovered. D.M. admitted that he brought the rubbing alcohol and lighter from home.

After the incident, D.M. was taken to a detention center and then later admitted to Meridell Treatment Center, a center for children who have emotional and behavioral problems. While in Meridell, D.M. underwent several psychological evaluations. In one of these evaluations, D.M. admitted that he was fascinated by fire. He also admitted that he started experimenting with fire when he was four or five years old and that he has done some "explosive stuff" in his backyard. He further stated that, although there are certain people at his school that he would like to hurt, he has done a good job of restraining himself.

---

[1] In Texas, special education students receive individualized instruction that comports with an education plan developed by a committee of school administrators, teachers, and parents called the admission, review, and dismissal committee. *See* 20 U.S.C.A. §§ 1401(14) (describing individualized education program), 1414(d) (West Supp. 2005) (describing requirements of individualized education program); 19 Tex. Admin. Code § 89.1050 (2005) (requiring school districts to set up admission, review, and dismissal committee).

[2] The director of safety and risk management for Round Rock Independent School District, Michelle Faust, testified that the total amount of damage caused by the fire was over $100,000.

D.M. was released from Meridell in February 2004 and pleaded true to a charge of felony criminal mischief. *See* Tex. Pen. Code Ann. § 28.03 (West Supp. 2005). The trial court conducted a hearing to determine D.M.'s disposition and the amount of restitution to be paid. *See* Tex. Fam. Code Ann. §§ 54.04 (West Supp. 2005), 54.041. At the hearing, D.M. testified that other students picked on him and that the teachers never did anything about it even after he told them. Further, he stated that several boys had pressured him to pull the fire alarm and to set the fire and had pressured him to damage other school property as well. Although D.M. agreed that he should be held responsible for setting the fire, he also stated that the school was partially to blame for the incident because the school did not protect him from the bullying and harassment.

D.M.'s father also testified at the hearing. He testified that, after the incident with the fire alarm, he and his wife were concerned about placing D.M. back into general classes and that they had communicated their concerns to school officials who assured them they would monitor D.M. He also testified that he believed his liability as a parent should be limited to the replacement cost of the couch D.M. burned and that the school should assume responsibility for the remainder of the damage.

Further, he stated that he had advised his son to notify a teacher whenever he was bullied and to walk away from the situation. He also described the discipline D.M. received at home when he misbehaves, including revocation of computer, video game, and television privileges, and testified that he and his wife have done everything possible to prevent D.M. from breaking the law. He also stated that he encouraged D.M. to tell the truth about what happened to the police and that D.M. should take responsibility for the damage he has done.

5

The assistant director for juvenile services for Williamson County, Scott Matthew, also testified at the hearing. Matthew stated that juvenile services recommended D.M. receive twelve months' in-home probation. Matthew recommended that the parents be required to pay the maximum amount allowed by the family code as restitution. Matthew further testified that D.M.'s parents have provided an "umbrella" of protection for him, which has allowed D.M. to avoid the consequences of his actions.

A pre-disposition social history report, which had been prepared previously, was admitted into evidence at the hearing. The report included a statement from D.M.'s mother. In the statement, D.M.'s mother wrote that she notified the school of the change in his medications and of the possibility that D.M. may be suffering from bipolar disorder. She further stated that, within a few days of the medicine change, D.M. began exhibiting strange behaviors, including trying to bite a teacher. She also stated that she blamed the school for failing to adequately monitor D.M.'s behavior after she informed the school of the change in his medication and for failing to take action in light of the strange behaviors D.M. exhibited prior to setting off the fire alarm. In addition, she stated that she had repeatedly complained to the school about D.M.'s poor social skills and lack of friends and that she believed the school had failed D.M. by not addressing the harassing and bullying that had previously occurred. Finally, she described D.M.'s home life. She stated that they had a strict but loving household, that D.M. is helpful around the house, and that they did their best to discipline D.M. for his misbehavior.

After hearing testimony, the trial court entered an order of probation under which D.M. was placed on in-home probation for 12 months and D.M.'s parents were ordered to pay

$25,000 in restitution: $10,000 within 30 days and $1500 per month after the first payment. The order also required D.M. to perform 48 hours of community service and to attend a peer pressure reversal program. Appellants appeal the portion of the probation order requiring them to pay restitution.

## DISCUSSION

Appellants raise two issues on appeal. First, they contend that the trial court erred when it ordered them to pay restitution because there was insufficient evidence to support the order. In support of this argument, appellants contend that the State must prove that the parents of a delinquent child failed to engage in good faith efforts to prevent delinquent conduct before they may be required to pay restitution. In their second issue, they assert that the statutes allowing a trial court to impose a restitution requirement on the parents of a delinquent child are unconstitutional because they violate the open courts provision of the Texas Constitution and violate due process. As part of this argument, appellants insist that due process requires the State to prove the absence of good faith efforts before requiring parents to pay restitution. Consequently, appellants' first issue and the due process argument both raise a burden of proof issue: whether parents must prove "good faith efforts to prevent delinquent behavior" to avoid being required to pay restitution or whether the State must prove a lack of "good faith efforts" in order for the trial court to order the parents of a delinquent child to pay restitution. Because this common question was more thoroughly briefed in the due process portion of appellants' brief, we will address that issue first.

**Due Process Violation**

In their second issue, appellants contend that the statutes governing the imposition of restitution violate due process by either failing to assign the burden of proof for determining whether the parents of a delinquent child are excused from paying restitution due to their good faith efforts to prevent delinquent behavior or by improperly assigning that burden to the parents. *See* Tex. Fam. Code Ann. § 54.041(g). Appellants claim that, because of the quasi-criminal nature of juvenile hearings, due process requires the State to prove that parents did not engage in good faith efforts to prevent delinquent behavior beyond a reasonable doubt before restitution may be imposed. *See McMillan v. Pennsylvania*, 477 U.S. 79, 86 (1986) (in certain circumstances, reasonable-doubt requirement applies to facts not formally identified as elements of offense charged). However, they assert that the family code fails to assign a burden of proof for demonstrating whether the parent has engaged in good faith efforts. Because of this failure, they contend that trial courts have the discretion to assign the burden to either party and that this discretion violates parents' rights to due process. *See* Tex. Code Crim. Proc. Ann. art. 42.037(k) (West Supp. 2005) (allowing trial court to assign burden of proof on matters not specifically assigned by statute to whichever party "justice requires");[3] Tex. Fam. Code Ann. § 54.041(b). Alternatively, they contend that subsection 54.041(g)

---

[3] Article 42.037(k) reads as follows:

The court shall resolve any dispute relating to the proper amount or type of restitution. The standard of proof is a preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense is on the prosecuting attorney. The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant and the defendant's dependents is on the defendant. The burden of demonstrating other matters as the court deems appropriate is on the party designated by the court as

8

of the family code incorrectly assigns the burden of proof for demonstrating good faith efforts to the parents of a delinquent child.[4] *See* Tex. Fam. Code Ann. § 54.041(g). In either case, they insist that the statutory scheme governing restitution allows for arbitrary and discriminatory application, violates due process, and deprives parents of a reasonable opportunity to prepare a meaningful defense. *Cf. Clark v. State*, 665 S.W.2d 476, 482 (Tex. Crim. App. 1984) (penal statutes must be drafted in manner that does not encourage arbitrary and discriminatory enforcement).

We will first address the question of whether the family code assigns the burden of proving good faith efforts. This determination necessarily involves statutory construction, which we review *de novo*. *See In re Forlenza*, 140 S.W.3d 373, 376 (Tex. 2003). When construing a statute, we must determine and give effect to the Legislature's intent. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). In determining legislative intent, we must look to the entire act and not just isolated portions. *Id.* Therefore, we must read the statute as a whole and must give effect to every part. *Id.*

---

justice requires.

Tex. Code Crim. Proc. Ann. art. 42.037(k) (West Supp. 2005).

[4] In their briefs, appellants refer to both the burden of persuasion and the burden of proof. The burden of proof consists of the combination of two components—the burden of production and the burden of persuasion. *Cf. Alford v. State*, 866 S.W.2d 619, 621 n.4 (Tex. Crim. App. 1993). The burden of persuasion refers to the burden of persuading the trier of fact that the alleged fact is true. *Cf. id.* Because the distinction is not relevant to the outcome of this appeal, we will refer only to the burden of proof.

The family code requires the State to prove beyond a reasonable doubt that a child has engaged in delinquent conduct, *see* Tex. Fam. Code Ann. § 54.03(f) (West 2002 & Supp. 2005), and the code of criminal procedure requires the State to prove by a preponderance of the evidence the amount of damage sustained as a result of the delinquent behavior, *see* Tex. Code Crim. Proc. Ann. art. 42.037(k). Once the delinquent behavior is proven, the family code specifies that the parents of a delinquent child are liable for the property damage caused by "the wilful and malicious conduct of a child who is at least 10 years of age but under 18 years of age." Tex. Fam. Code Ann. § 41.001 (West 2002); *see also id.* § 51.01(2)(C) (specifying that one of the purposes of juvenile justice code is to "provide treatment, training, and rehabilitation that emphasizes the accountability and responsibility of both the parent and the child for the child's conduct"). In addition, the family code authorizes courts to impose restitution against the parents of a child who has "engaged in delinquent conduct . . . arising from the commission of an offense in which property damage . . . occurred." *Id.* § 54.041(b). However, section 41.002 of the family code limits the amount of damages that may be recovered to actual damages, which may not exceed $25,000 per occurrence. *Id.* § 41.002 (West 2002).

When construed together, sections 41.001, 51.01(2)(C), and 54.041(b) of the family code establish a scheme in which, after the wilful delinquent conduct of their child is proven, parents are *per se* liable for the actions of their children. However, subsection 54.041(g) of the family code requires the parents to be excused from liability for the actions of their child if the court makes a finding that the child engaged in the delinquent behavior despite the parents' good faith efforts. Specifically, subsection 54.041(g) of the family code provides as follows:

> On a finding by the court that a child's parents or guardians have made a reasonable good faith effort to prevent the child from engaging in delinquent conduct or engaging in conduct indicating a need for supervision and that, despite the parents' or guardians' efforts, the child continues to engage in such conduct, the court *shall* waive any requirement for restitution that may be imposed on a parent under this section.

*Id.* § 54.041(g) (emphasis added).

This provision in no way indicates that parents enjoy a presumption of "good faith efforts" and does not qualify the legal obligations created by section 41.001 in any manner. Given the relevant family code sections referenced above, we can only conclude that the family code places the burden on parents of a delinquent child to prove that their child engaged in the delinquent behavior in question despite their good faith efforts. *Cf. Martin v. Ohio*, 480 U.S. 228, 236 (1987) (even in criminal context, legislature may place burden of proving affirmative defense on defendant without violating due process). We must now consider whether the assignment of this burden violates due process.

At common law, the parent-child relationship was not considered a proper basis for imposing vicarious liability on parents for their child's delinquent behaviors. *See General Ins. Co. of Am. v. Faulkner*, 130 S.E.2d 645, 648 (N.C. 1963). However, this view of the parent-child relationship changed in response to increases in juvenile delinquency and to frustration with the outcome under the common law as leaving an injured victim with no legal recourse. *Id.*; *see also Greater Houston Transp. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990) (parent-child relationship imposes duties of supervision and control not present in other types of relationships, including legal responsibility to prevent children from committing delinquent acts); Restatement (Second) of Torts

11

§ 316 (1965) (parent under duty to control minor child to prevent child from intentionally harming others).

In response to this changing view of the parent-child relationship, Texas and other states enacted statutes imposing liability on the parents of delinquent children for damage caused by their children. *Cf. In re Sorrell*, 315 A.2d 110, 114 (Md. App. 1974) (describing similar statutes that have been enacted in other states). Some of these statutes have been attacked on constitutional grounds similar to the ones raised in this case, but courts have upheld the constitutionality of these statutes. *See*, *e.g.*, *In re Sorrell*, 315 A.2d at 116 (concluding statute imposing liability on parents of delinquent child for property damage and for medical bills for injuries caused by delinquent behavior constitutional); *Faulkner*, 130 S.E.2d at 650 (statute within police power of state and does not violate federal or state constitutions); *Mahaney v. Hunter Enters., Inc.*, 426 P.2d 442, 444 (Wyo. 1967) (concluding statute constitutional). *But see Corley v. Lewless*, 182 S.E.2d 766, 770 (Ga. 1971) (concluding that statute imposing unlimited liability on parents of delinquent child violates due process). Texas courts have also concluded that prior statutes holding parents liable for the delinquent actions of their children were constitutional. *See Buie v. Longspaugh*, 598 S.W.2d 673 (Tex. Civ. App.—Fort Worth 1980, writ ref'd n.r.e.) (upholding former sections 33.01 to 33.03 of the family code, which authorized holding parents liable for wilful and malicious conduct of their children up to $5,000); *Kelly v. Williams*, 346 S.W.2d 434 (Tex. Civ. App.—Dallas 1961, writ ref'd n.r.e.) (upholding former statute that authorized victim to recover up to $300 from parent of child who maliciously and wilfully destroys property).

12

The rationale for finding these various statutes constitutional has varied. In *In re Sorrell*, the court concluded that the statutes in question were a valid exercise of the State's police power to protect the general welfare and, therefore, did not violate the due process clause. 315 A.2d at 166; *see also Atlantic Coast Line v. Goldsboro*, 232 U.S. 548, 558 (1913) (due process clause does not have effect of overriding power of State to establish regulations reasonably necessary to secure safety or general welfare of the community). Similarly, in *Faulkner*, the court concluded that the statute did not violate due process and explained:

> that parental indifference and failure to supervise the activities of children is one of the major causes of juvenile delinquency; that parental liability for harm done by children will stimulate attention and supervision; and that the total effect will be a reduction in the antisocial behavior of children.

130 S.E.2d at 650.

Comparably, in *Buie*, the court concluded that the purpose of delinquency statutes was to "protect and compensate property owners from the wilful and malicious destruction of their property by minors" and that holding parents liable for the actions of their children provides the "greatest amount of encouragement for parents to train, control, and discipline their children." *Buie*, 598 S.W.2d at 676. In *Kelly*, the court concluded that it is better for the parents of delinquent children to be held liable for the damage their children cause, even if the parents are without fault, than to allow "the loss [to] fall upon the innocent victims." *Kelly*, 346 S.W.2d at 438.

These same justifications weigh in favor of finding that placing the burden of proving good faith efforts on the parents is constitutional. Further, unlike other state statutes that were held

to not violate due process, the family code provides parents with a defense to liability if they can prove that their child engaged in the delinquent conduct despite their good faith efforts. Tex. Fam. Code Ann. § 54.041(g); *see also Faulkner*, 130 S.E.2d at 650 (statute holding parents liable for action of child satisfied due process because it required person seeking recovery to establish that (1) minor was under the age of 18 when action committed and (2) minor maliciously or wilfully destroyed property). Appellants in this case were allowed to testify and present evidence regarding their parenting efforts and the extent of liability they believed they should be subjected to. They were afforded the fundamental requirements of due process: they were notified of the disposition hearing and were given an opportunity to be heard in a meaningful manner. *Cf. Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Texas Workers' Comp. Comm'n. v. Patient Advocates of Tex., Inc.*, 136 S.W.3d 643, 658 (Tex. 2004). In addition, despite the substantial amount of damage caused by D.M., the family code limited the appellants' total liability to $25,000. *See Corley*, 182 S.E.2d 766 (statute subjecting parents to unlimited liability for acts of children unconstitutional). Finally, placing this burden of proof on parents is appropriate given that parents have unique access to and control over their children and given that generally parents alone will know of their good faith efforts to prevent their children from engaging in delinquent behavior.

Accordingly, we hold that allowing courts to impose restitution on parents of delinquent children and placing the burden on parents to prove their good faith efforts to prevent delinquent behavior as a defense to liability does not allow for arbitrary and discriminatory application, violate due process, or deprive parents of a reasonable opportunity to prepare a meaningful defense. Therefore, we overrule this issue on appeal.

**Open-Courts Violation**

In their second issue, appellants also contend that provisions of the family code authorizing the trial court to impose restitution against the parents of a delinquent child violate the open-courts provision of the Texas Constitution. *See* Tex. Fam. Code Ann. §§ 54.041(b); 54.048 (West 2002) (authorizing trial court to require restitution be paid by child or child's parents). They assert that, at common law, parents had no duty to pay for the criminal acts of their children. *See*, *e.g.*, *Chandler v. Deaton*, 37 Tex. 406 (1873) (no presumption growing out of relationship between parent and child that would hold father responsible for crime committed by his minor child, unless it be shown that father in some way was implicated as principal or accessory). They further argue that sections 54.041(b) and 54.048 of the family code and their predecessors abrogated parents' common law "right" to not be held liable for the criminal acts of their children. Tex. Fam. Code Ann. §§ 54.041(b); 54.048.

Appellants claim that these statutes violate the open-courts provision because they abrogate a common law right without providing an alternate remedy or, alternatively, provide a remedy that is contingent upon an impossible condition. *See*, *e.g.*, *Sax v. Votteler*, 648 S.W.2d 661, 667 (Tex. 1983) (statute specifying two year statute of limitations for medical malpractice claims violated open courts provision because minors cannot file suit due to legal incapacity and cannot sue parents for failure to file on their behalf due to parent-child immunity). Specifically they assert that parents will be unable to recover from their children the amount of restitution paid due to the doctrine of parent-child immunity and that, in their case, the only other party that they might recover from is Round Rock Independent School District, which is immune from suit.

The "open courts" provision reads as follows: "All courts shall be open, and every person for an injury done him, in his lands, goods, persons or reputation, shall have remedy by due course of law." Tex. Const. art. I, § 13. The open courts provision ensures that citizens bringing common law causes of action will not unreasonably be denied access to the courts. *Sax*, 648 S.W.2d at 664. To prove an open courts violation, a litigant must show that he has a cognizable common law cause of action that is being restricted and must show that the restriction is arbitrary or unreasonable when balanced against the purpose of the statute. *Id.* at 666. The legislature violates the open courts provision when it makes a remedy by due course of law contingent on an impossible condition. *See Nelson v. Krusen*, 678 S.W.2d 918, 921 (Tex. 1984).

In support of their arguments, appellants cite to various cases in which courts have concluded that a statute violated the open courts provision because it abrogated a common law right to sue by shortening the time period for filing suit[5] and to a case in which the court concluded that

---

[5] Appellants also cite to the following cases: *Weiner v. Wasson*, 900 S.W.2d 316 (Tex. 1995) (statute provided two-year statute of limitations for medical malpractice claims; court concluded statute violated open courts provision for minors because minors precluded from suing parents under doctrine of parent-child immunity for negligence if parents did not file suit); *Nelson v. Krusen*, 678 S.W.2d 918, 921 (Tex. 1984) (court concluded that statute, which had two-year statute of limitations for filing wrongful birth suit against doctor was unconstitutional because nature of injury made it impossible for parents to discover injury within two years); *McCrary v. City of Odessa*, 482 S.W.2d 151 (Tex. 1972) (city charter required injured person filing suit against city give notice to city council within 60 days of injury; court concluded minor making claim was excused from requirement until reached majority).

requiring a party to provide the city with notice of a defective condition prior to the person being injured imposed an unreasonable condition precedent to recovery.[6]

These cases have little applicability to the present issue. They involve instances in which a litigant's right to sue has been curtailed due to the passage of legislation, such as the imposition of a statute of limitations barring a suit if it is not filed within a certain time period. No common law cause of action is being restricted by the statutes involved in the present case: the "right" not to be held liable for the actions of another does not constitute a cause of action.[7]

Further, there is a special relationship between a parent and a child that imposes a duty on the parent to control the child's conduct. *Greater Houston Transp.*, 801 S.W.2d at 525; *see also* Restatement (Second) of Torts § 316 (1965) (parent under duty to control minor child to prevent

---

[6] *See Hanks v. Port Arthur*, 48 S.W.2d 944 (Tex. 1932) (plaintiff was injured while walking on sidewalk and sued city, but city charter specified that city not liable for injuries unless city commissioner personally inspected defect at least 24 hours prior to injury; court concluded section unconstitutional because it required people ignorant of the defect to give notice to city to be able to recover for injury sustained, which imposed an unreasonable condition precedent to recovery).

[7] Further, the doctrine of parental immunity does not apply under the circumstances of this case. The doctrine, in its most basic form, prevents children from suing their parents to recover for damages sustained as a result of their tortious actions. *Jilani v. Jilani*, 767 S.W.2d 671, 671 (Tex. 1988). The doctrine prohibits suits by children against their parents regarding alleged acts of ordinary negligence that involve a reasonable exercise of parental authority or the exercise of ordinary parental discretion. *Weiner v. Wasson*, 900 S.W.2d at 316 n.4; *see also Jilani*, 767 S.W.2d at 673 (concluding no parental immunity for negligent operation of motor vehicle because it is not essential parental action); *Felderhoff v. Felderhoff*, 473 S.W.2d 928, 933 (Tex. 1971) (minor son allowed to sue father's partnership because son worked for partnership and injured due to negligence of father in course and furtherance of business rather than discharge of parental duties). The doctrine does not address the situation of parents seeking contribution from their child for restitution they were required to pay as a result of the child's delinquent behavior.

17

child from intentionally harming others). Because of this special relationship, the family code authorizes the court to require parents pay restitution for their failure to properly monitor and control their child's behavior if the child engages in delinquent activity. *See* Tex. Fam. Code Ann. § 54.041(b). Rather than abrogating a common law right not to be held liable for the tortious actions of others, the statutes impose liability on parents for their failure to properly supervise their children.

Because no common law cause of action is being abridged, we conclude that sections 54.048 and 54.041(b) do not violate the open courts provision of the Texas Constitution. Therefore, we overrule appellants' second issue on appeal.

## Sufficiency of the Evidence

In their first issue, appellants insist that, even if the burden of proof falls on parents, the trial court erred in requiring them to pay restitution because the evidence supports the conclusion that D.M.'s parents made reasonable good faith efforts. Therefore, they urge that there was legally and factually insufficient evidence to support the trial court's "negative finding" that they did not make reasonable good faith efforts.

In support of this argument, appellants point to testimony that (1) they disciplined D.M. for poor behavior, (2) they asked the school district not to return D.M. to his regular schedule so quickly after he pulled the fire alarm, (3) they did everything they could to prevent D.M. from engaging in unlawful conduct, and (4) there was nothing in the record to indicate D.M.'s parents were responsible for his delinquent behavior.

Appellants also argue that the trial court erred in requiring them to pay restitution because there was legally and factually insufficient evidence that the restitution would promote D.M.'s rehabilitation as required by subsection 54.041(b) of the family code.[8]

In support of this argument, appellants point to testimony given by D.M. that he was responsible for his actions and should volunteer for community service to pay back the community. They further point to testimony from D.M. that he did not intend to cause any damage other than lighting the couch on fire and that he was trying to repair the damage he had done to his family. Finally, they point to previously discussed evidence of their efforts to discipline D.M. and to a statement given by D.M.'s former cub scout troop leader describing appellants as good and involved parents.

Finally, appellants assert that the trial court abused its discretion by requiring them to pay restitution because it either failed to consider the school district's failure to take reasonable actions that could have prevented D.M. from setting the fire or incorrectly decided that the district's actions did not matter.[9] Specifically, they argue that the district failed to stop other students from

---

[8] Subsection 54.041(b) reads, in relevant part, as follows:

> [T]he juvenile court . . . may order the child or parent to make full or partial restitution to the victim of the offense. The program of restitution must promote the rehabilitation of the child, be appropriate to the age and physical, emotional, and mental abilities of the child, and not conflict with the child's schooling.

Tex. Fam. Code Ann. § 54.041(b) (West 2002 & Supp. 2005).

[9] D.M.'s parents point to the following statement from the trial judge to D.M. as proof that the court did not consider the district's actions in making the restitution award:

> But you know what you did was absolutely wrong. And I don't care who told

bullying D.M. even after D.M. informed school officials of the harassment and that the admission, review, and dismissal committee ignored their concerns that D.M. should not be placed back into his regular schedule so soon after setting off the fire alarm. Appellants assert that article 42.037(c) of the code of criminal procedure compelled the trial court to consider the school district's actions when determining what amount of restitution to award. Article 42.037(c) specifies that the trial court, in determining the amount of restitution to award, shall consider the "amount of loss sustained" and "other factors the court deems necessary." Tex. Crim. Proc. Code Ann. art. 42.037(c) (West Supp. 2005); *see Koch v. Koch*, 27 S.W.3d 93, 95 (Tex. App.—San Antonio 2000, no pet.) (trial court abuses its discretion when it declines to exercise power of discretion vested in it by law and circumstances require power be exercised).

The decision of whether to award restitution is within the sound discretion of the trial court and is reviewed under an abuse of discretion standard. *In re C.T.*, 43 S.W.3d 600, 602 (Tex. App.—Corpus Christi 2001, no pet.); *Cartwright v. State*, 605 S.W.2d 287, 289 (Tex. Crim. App. 1980). Under an abuse of discretion standard, legal and factual insufficiency are not independent grounds of error but are factors to consider in the determination of whether the trial court abused its discretion. *Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex. App.—Austin 1997, no pet.); *Burns v. Miller, Hiersche, Martens & Hayward, P.C.*, 948 S.W.2d 317, 324 (Tex. App.—Dallas 1997, writ denied); *see In re B.B.*, No. 05-01-01847-CV, 2002 Tex. App. LEXIS 6531, at *2 (Dallas Sept. 4,

you to do it. If they absolutely told you to do it, you know you didn't have to do it.

20

2002, pet. denied) (not designated for publication); *cf. In re K.T.*, 107 S.W.3d 65, 72-75 (Tex. App.—San Antonio 2003, no pet.) (court concluded that legal and factual sufficiency standard of review is not appropriate to review juvenile disposition order; rather abuse of discretion standard, divorced from legal and factual sufficiency review, applies). A trial court abuses its discretion when it acts arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).

Regarding the parents' efforts to prevent D.M. from engaging in delinquent conduct, the evidence presented to the trial court indicated that the supplies used in setting the fire were brought from home. The evidence further showed that D.M. had been experimenting with fire for years and had caused different items to explode in his backyard. At the hearing, D.M. and his parents placed most of the responsibility for the fire on the school district, rather than on D.M. D.M.'s father believed they should only be liable for the damage D.M. intended to cause—the burning of the couch. The county's assistant director of juvenile services testified that D.M.'s parents have shielded D.M. from taking responsibility for his misbehavior. Finally, D.M.'s parents did not provide any evidence of their efforts to discourage D.M. from experimenting with fire.

Regarding the rehabilitative effect on D.M., we cannot conclude that, given the circumstances of this case and our standard of review, the trial court erred when it concluded that requiring appellants to pay restitution would have a rehabilitative effect on D.M. We initially note that the probation order specified that the restitution imposed promoted D.M.'s rehabilitation and was appropriate given D.M.'s age and his physical, mental, and emotional abilities. *See* Tex. Fam.

21

Code Ann. § 54.041(b).[10] D.M. was thirteen years old when he set fire to the school. He was old enough to realize that starting a fire might cause greater damage than was intended, including damage caused by smoke and from attempts to extinguish the fire. Further, he had experimented with fire from a very young age and had previously pulled a fire alarm at the school. Holding D.M.'s parents liable for $25,000 of the more than $100,000 in damages caused by D.M.'s delinquent action will have the added effect of teaching D.M. that there are serious financial consequences that can result from delinquent behavior. This rehabilitative effect would be significantly lessened if the appellants' liability were limited to the replacement value of the couch, the item D.M. intended to burn.

We disagree with appellants' assertion that the trial court abused its discretion by requiring the appellants to pay restitution damages in light of the actions of the school district that allegedly contributed to the setting of the fire.[11] It is unclear from the record what role the district's actions played in the trial court's decision. Although article 42.037(c) of the code of criminal procedure allows a trial court to consider "other factors the court deems appropriate" when determining restitution awards, there is no requirement mandating the consideration of how the conduct of another party contributed to the delinquent behavior. *See* Tex. Code Crim. Proc. Ann.

---

[10] We also note that the court also ordered D.M. to perform community service and to attend peer-pressure reversal classes, which also address rehabilitation.

[11] Although appellants contend that due process and equity require that the concept of "unclean hands" or contributory negligence be applied in a juvenile proceeding, they have not cited to any authority for this proposition, nor have we found any.

art. 42.037(c). Further, the statute gives the trial court discretion to determine what factors to consider in making a restitution award. *See id.*

Regarding the amount of restitution awarded, evidence was introduced at the hearing demonstrating that the school district sustained over $100,000 in damage as a result of D.M.'s actions. An estimate for repairing the damage, which included the cost of removing the water released by the sprinkler system, was provided. Further, a list of the revenue from the sale of food that was lost as a result of fire was also provided. Finally, an invoice of the food that was lost due to the fire was submitted. Therefore, the juvenile court's award of $25,000 for restitution damages has a factual basis within the actual damages sustained and is, therefore, just. Given the facts outlined above, we cannot conclude the trial court abused its discretion in ordering appellants to pay $25,000 in restitution damages. Accordingly, we overrule appellants' first issue on appeal.

## CONCLUSION

Having overruled all of appellants' issues on appeal, we affirm the order of the trial court.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: March 30, 2006

23