

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00003-CR

_____

CODY WAYNE MCKAY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 29032

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss
Dissenting Opinion by Justice Moseley

## MEMORANDUM OPINION

A nightmarish accident, in which two-year-old Tristyn Jones was badly burned over most of her back, formed the basis for the Hunt County prosecution and conviction of Cody Wayne McKay for injury to a child through an action of criminal negligence.[1]  This case raises the difficult question of whether McKay's act of cooking vegetables in a small kitchen and carrying them from one work surface to another, while a toddler was unconfined somewhere in the living space, posed a substantial and unjustifiable risk of injury to the toddler of which McKay ought to have been aware.  While this Court fears that a similar nightmare could easily play out in many kitchens across Texas, we conclude on this record that legally sufficient evidence supports the jury's verdict of guilt.

The sole focus of this appeal is whether there is sufficient evidence to support the conviction.  The act and injury are admitted, the question here is the legal sufficiency of the evidence to prove McKay's criminal negligence.  Although the State initially indicted McKay for serious bodily injury to a child and claimed it was intentional, it amended the indictment to delete "serious," and the jury charge included multiple levels of lesser offenses, including the criminal negligence the jury found.

The principal effort of, and thus the subject of much of the evidence produced by, the State in this prosecution suggested that McKay intended to injure Tristyn.  Because the State tried to prove intentional injury to a child, we find ourselves with a challenging mission—to review this record for evidence tending to support the finding of criminal negligence.

---

[1]McKay was sentenced to two years in a state jail facility.

Bodily injury to a child is a third-degree felony if committed intentionally or knowingly, and a state jail felony if committed recklessly. *See* TEX. PENAL CODE ANN. § 22.04(a), (e) (West Supp. 2014); *Villanueva v. State*, 227 S.W.3d 744, 748 n.17 (Tex. Crim. App. 2007). For it to be an offense, criminally negligent injury to a child must be by an affirmative act. *See* TEX. PENAL CODE ANN. § 22.04(a); *Villanueva*, 227 S.W.3d at 748 n. 17. By contrast, criminally negligent injury to a child by omission[2] is not an offense at all. *Villanueva*, 227 S.W.3d at 748 n.17.

A person acts with criminal negligence when he or she takes some action—like cooking beans on a stove top and transferring those scalding hot beans across the kitchen—and ought to be aware of a substantial and unjustifiable risk that the result—in this case, injury to a child—will occur. *See* TEX. PENAL CODE ANN. § 6.03(d) (West 2011); *Keener v. State*, 424 S.W.3d 196, 200 (Tex. App.—Amarillo 2014, no pet. h.). "The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." TEX. PENAL CODE ANN. § 6.03(d).

Against that standard, we review the evidence in this record.

The kitchen in which the incident occurred is a small, narrow, galley kitchen with the stove and refrigerator on one side and the sink and cabinet space on the other. The evening of the accident, McKay was in the kitchen cooking, and Tristyn was in the apartment playing. While McKay was "trying to make plates," Tristyn "ran through" the kitchen. McKay turned around, not knowing that Tristyn was behind him, and tripped over her. McKay knew that

---

[2]An omission is a failure to act. TEX. PENAL CODE ANN. § 1.07(a)(34) (West Supp. 2014).

3

"Tristyn was running around playing but didn't know she had come into the kitchen." Tristyn was "running behind" or was "behind" McKay while he was cooking green beans on the stove top. When he turned with the pot of beans, "Tristyn was behind him and he tripped over her."

An assessment by Child Protective Services (CPS) was that McKay was not an appropriate caregiver and "not fully aware of what he was doing."

The State makes much of what steps were taken, omitted, or delayed after the accident, but we do not see how inaction or delay after the accident helps establish criminal negligence in causing the accident. A large part of the State's evidence is intended to show that McKay's injuring Tristyn was intentional, but the jury appears to have discounted that evidence, and we are not called on to review that result.

As a result of the accident, Tristyn was burned over a large portion of her back, photographs of which were introduced at trial showing a large area that was extremely red and in places was blistered. As feared by Brandee Casteel, Tristyn's mother, CPS got involved, took both children away from her, and sought to terminate her parental rights, evidently based solely on this incident.

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury

4

charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

Here, the State must have proven that McKay, with criminal negligence, by act, caused bodily injury to Tristyn. *See* TEX. PENAL CODE ANN. § 22.04(a)(3). The State proposes a number of different reasons why it believes the evidence is sufficient to show that McKay was criminally negligent. The State suggests McKay should have been aware that cooking hot items, or boiling water on a stove was criminally negligent when a child was in the house. Backing up from that position, the State also suggests that his action of moving the pan full of hot water and green beans from sink to counter itself was criminally negligent. In both instances, our focus is on whether there is some evidence to allow the jury to have found that these actions created a substantial and unjustifiable risk that the result (the injury) would occur to a small child in the house.

In argument, the State also tried to shift the jury's attention away from the case at bar to a number of bruises that the child exhibited when examined.[3] The State also introduced over 1,000 pages of reports generated by CPS in connection with this case and dumped those into the jury's laps as exhibits. They were not used extensively or read to the jury, but were admitted into evidence and were available for it to read should it choose to do so.

---

[3]As pointed out at trial, the bruises were numerous, but minor, and the various x-rays and other examinations by medical personnel revealed no broken bones and no healed breaks or fractures. The parties all testified that the girl played outside a lot and that, as well as falling down as a two-year-old is wont to do, their two dogs had both often knocked her down as part of their play.

There are very troubling aspects to this exercise. If it is criminally negligent to cook, or move hot food or water from one place to another, in a kitchen with small children in the vicinity, then most parents in the State who do not subsist on fast food alone might be said to be guilty of criminal negligence. Although a parent may attempt to keep track of where his or her child is as a matter of course, unless the child is confined in a particular space, those attempts will inevitably fail from time to time. This is not a situation where McKay turned, took several steps without looking, and tripped over the child. The space is very tight. The jury found no merit to the State's efforts to prove that McKay intentionally or even recklessly poured boiling water and beans over the child. We are left with the strictures of criminal negligence.

One unusual aspect to this record is that Casteel originally reported that she was the one who spilled hot beans on Tristyn, but later stated that the actor was McKay and otherwise that the accident had happened just like she had reported. In one, potentially vital, comment, she stated—when noting to investigators initially that she had tripped over Tristyn in the kitchen and burned her—that Tristyn is "always" "up her butt." We understand that colloquialism to mean that Tristyn is "always" getting close at hand or under foot. Another way of saying that would be to say that, quite often, Tristyn was getting in the way of an adult in the living space. While the comment by Casteel, admitted into evidence, does not necessarily mean that Tristyn was also "always" under McKay's feet, a fact-finder might so conclude. McKay had lived with Casteel and her children approximately two and one-half months at the time of the accident. Because of this state of the record, we conclude that the jury, if it so decided, was authorized to find that McKay knew or should have known that Tristyn was "always" underfoot in the residence.

6

In the end result, beyond the common situation in which toddlers are loose in a residence, we are faced with the comment from Casteel suggesting that it was normal for Tristyn to be under foot in the kitchen. Given that, the jury could also have concluded that, charged with that knowledge, McKay was criminally negligent to have moved the hot pot of beans across the space without first checking to see if Tristyn was, again, under foot. The evidence was legally sufficient to support the conviction.

We affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice

DISSENTING OPINION

In this matter, it is plain to see that the State made a very strong case that Cody Wayne McKay was an inept, ineffective, and inattentive sitter for a small child. That, however, is not the crime with which McKay was charged. Rather, McKay was charged with having intentionally, knowingly, or recklessly caused bodily injury to Tristyn Jones, a child under fourteen years of age, by pouring boiling water on her head or scalding her.

McKay has appealed, claiming an insufficiency in the evidence to sustain the conviction. There is no question pertaining to the role played by an appellate court in reviewing a challenge to the legal sufficiency of the evidence. That test is, "'Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.'" *Brooks v. State*, 323 S.W.3d 893, 899 n.13 (Tex. Crim. App.

7

2010) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In making this review, a "'court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* (quoting *Jackson*, 443 U.S. at 326).

In this case, the majority has diligently pored through the record to perform its required function under such a challenge and has located a small part of a very lengthy report generated by the Texas Department of Family and Protective Services. This report quotes the injured child's mother as saying that when the mother was with her child, the child (Tristyn) was "always" "up her butt." From this, the majority assumes that the child would not only be underfoot with her mother, but she would also be "getting in the way of an adult in the living space." Just because a child may regularly be underfoot of its mother, it takes too great a leap of logic to assume that the child would treat just any sitter or caregiver in the same fashion. The courts of this State have repeatedly recognized that a special relationship exists between a parent and a child. *Providence Health Ctr. v. Dowell*, 262 S.W.3d 324, 331 (Tex. 2008); *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996). In some circumstances, the Legislature has recognized the special relationship existing between parents and children and has imposed certain obligations on parents for the conduct of their children. *In re D. M.*, 191 S.W.3d 381, 392 (Tex. App.—Austin 2006, pet. denied).

In other words, the conduct of a child in the presence of its mother could easily be substantially different than it would be around a simple sitter or caregiver. Just because there is

8

evidence that the child was regularly underfoot with her mother is not evidence that the child was likewise underfoot with McKay, her sitter.

Unless we take the leap of logic to assume that the child's conduct in the presence of her mother would be identical to her conduct in the presence of a male sitter, we do not have the requisite evidence of negligence on the part of McKay to justify his conviction of the offense with which he is charged.

I respectfully dissent.

Bailey C. Moseley
Justice

Date Submitted:        June 4, 2014
Date Decided:          August 8, 2014

Do Not Publish