# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00241-CV

**Jason O. Gordon, Appellant**

**v.**

**Amanda Martin, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 3 OF WILLIAMSON COUNTY
### NO. 16-0010-FC3, THE HONORABLE JOHN MCMASTER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Jason Gordon, appearing pro se,[1] appeals from a final order modifying his access to the three children he has with his ex-wife, Amanda Martin. Specifically, Gordon contends the presiding judge abused his discretion by: admitting an unauthenticated photograph of alleged drugs; making findings of fact unsupported by the evidence; unreasonably restricting Gordon's access to his children; and ordering him to reimburse Martin for certain medical expenses and attorney's fees. We will affirm.

## BACKGROUND

Gordon and Martin have three children together: twin twelve-year-old girls and a younger boy. The couple divorced in 2016. Provisions in the final decree of divorce required

---

[1] Courts hold pro se litigants to the same standard as those represented by counsel. *United Copper Indus., Inc. v. Grissom*, 17 S.W.3d 797, 805 n.6 (Tex. App.—Austin 2000, pet. dism'd).

Gordon to pay child support and to reimburse Martin for certain medical expenses. Martin filed a motion to enforce those provisions in May of 2018.

In July of 2018, while the motion to enforce was pending, Martin filed a petition to modify possession and access and sought a temporary restraining order restricting Gordon's access to the children until her petition could be heard. In her petition, she alleged that the two girls had discovered a ziplock bag of what appeared to be drugs in Gordon's house while the children were in his care. The girls allegedly took a photo of the ziplock bag and showed their mother, who subsequently submitted a copy to the court. The court issued the temporary restraining order and scheduled a hearing for August 2, 2018.

At the August hearing, the only witnesses were Gordon, Martin, and an investigator from the Texas Department of Child and Family Protective Services. Most of the testimony revolved around the photo and the girls' reports of unusual activity in the household. Gordon testified that he did not know what was shown in the photo because he "never found the bag." He said he did not know who took the photo but conceded that the only individuals in the house at the time the photo was taken were his three children. When asked by counsel, he declined to testify that he believed the substance in the bag to be rock salt (i.e., instead of methamphetamines) but denied any drug use since the divorce. He submitted to the court the clean results of a recent urinalysis. He testified that he was opposed to any court-ordered drug testing because he believed it unnecessary, an invasion of his privacy, and because "[t]he children are not in danger." He said he could not consent to testing of his house because he was not the owner of the home. Gordon denied reports that he had frequent visitors that would stay for only a few minutes at a time. He conceded to leaving the girls alone or unattended for up to an hour at a time but denied that he and his girlfriend would lock themselves in the bedroom for

2

hours at a time while the girls were in the home. He also conceded that he and his girlfriend had had "some arguments" recently but was unsure about the accuracy of reports that neighbors could hear them shouting at one another.

The investigator testified that he had visited the children and asked them about the photo. When he began to describe his conversations with the children about the photo and about what they had observed in the household, counsel for Gordon raised a hearsay objection. The court sustained the objection but allowed the investigator to continue testifying, explaining, "I'm going to have an opportunity to interview the children in chambers, okay?" He continued, "[But] as to what his perceptions are, I will let him testify to that." The investigator testified that the substance in the photo looked "suspicious" and that he was concerned that no adults were present in the home at the time the substance was discovered. He attested to his impression that Gordon and his girlfriend would retire to their bedroom for sometimes hours at a time behind a locked door, and that the children's needs might be neglected during that time. When asked about the children's safety, he responded that it was his impression that the children were "concerned" for their safety but not "scared." Finally, he testified that it would assist his investigation if Gordon would submit to hair or fingernail testing and allow the Department to test the home for the presence of drugs.

Martin took the stand and testified that the girls showed her the photo, that it had not been altered since it was taken, and that the timestamp—which with geolocation data confirmed the girls' presence in Gordon's house—was correct. When Gordon's attorney again objected to this testimony as hearsay and challenged the authentication of the photograph, the court answered:

> Just so you know what the Court is going to do in the interview, I'm going to make a copy of [the picture of] that bag and sit down with the girls and say, "Did you take that picture?" That's what I'm going to do.

The court then allowed admission of the photo as movant's exhibit #1 and a second exhibit showing geolocation data from the time the photo was taken. Martin continued to testify of her concerns that Gordon might have relapsed into drug use and of her concerns for the welfare of her children while in his care. She emphasized that the children love their father very much and that "[t]hey just want him to be recovered and healthy."

On Martin's motion and over Gordon's objection, the court then conferred with the two girls in chambers. *See* Tex. Fam. Code § 153.009(b) (requiring, on motion of any party or on court's own initiative, court to interview in chambers a child 12 years of age or older on issues of conservatorship). There is no record of the exchange in chambers, and it is unknown exactly what the girls said, but their testimony clearly impacted the court. When the proceedings reconvened, the presiding judge summarized his interview as follows:

> [The girls] are really sweet. Completely credible. Smart, articulate. Really precious. Love their dad. I firmly believe that we have a problem. I'm cutting off access until we get the children in to see a therapist and let therapist work with dad. It's incumbent upon dad to facilitate that. I believe that there is reason, clearly reason, to believe that there's drug usage going on in the house. I believe that that is certainly a dangerous circumstance and certainly rises to the level of impairment to these children in terms of their emotional development. I want dad to participate in that counseling. I want a -- dad has the option to take a nail test today. If that is negative, that would be illuminating. If I could get a test of that house for drugs, that would also work very strongly in dad's favor.

The court then issued an order requiring Gordon to submit to same-day fingernail testing, to undergo counseling, and to pay for the counseling. The court also forbade any visitation

between Gordon and the children until the court could review his compliance with the terms of the order.

When Gordon failed to comply with the order, Martin filed a motion to enforce. The court ultimately held a final hearing to dispose of all issues. The judge heard additional testimony from Martin, from the family therapist that had been working with the children, and from Martin's attorney. The court also admitted several more exhibits. Gordon did not attend the hearing, although his attorney was present.

The Court rendered a final order including provisions requiring Gordon to undergo counseling for drug addiction and to submit to a series of fingernail tests. The court ordered restricted supervised possession of the children every other Saturday "until [he] has provided the negative nail[-]follicle drug test . . . and proof of attending the six counseling sessions." The court further provided that if Gordon would produce the clean test results and proof of counseling, his possessory rights would revert to the unsupervised possession outlined in the original decree of divorce. Finally, the court ordered increased child support, increased payments toward health insurance, reimbursement of outstanding medical bills, and reimbursement of Martin's attorney's fees.

Gordon requested findings of fact and conclusions of law, which the court provided. He also filed an unsuccessful motion for new trial followed by a motion to recuse the judge. He timely perfected this appeal.

**STANDARD OF REVIEW**

Modification of an existing possessory order is proper when circumstances have changed and the party moving to modify can demonstrate that the desired modifications are in

the best interest of the child or children subject to the order. *See* Tex. Fam. Code § 156.101. The resulting modification order "will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion." *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). The trial court abuses its discretion "if it acts arbitrarily and unreasonably or without regard to guiding rules or principles." *Id.* (citing *K–Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990)).

## DISCUSSION

Gordon raises four issues on appeal.[2] First, he argues that the court abused its discretion in admitting Martin's exhibit #1, the photograph depicting an unknown substance resembling methamphetamines. Second, he characterizes several of the findings of fact as "unsupported by the evidence" and "unreasonable." Third, he contends that Martin is not entitled to reimbursement of medical expenses. And finally, he challenges the court's decision to award Martin $5,400.00 in attorney's fees.

**Admission of Photograph**

Gordon first complains that the trial court abused its discretion by admitting Martin's exhibit #1 without anyone present to authenticate that photograph and its contents. This

---

[2] For the sake of brevity and clarity, we have consolidated Gordon's issues based on the substance of his arguments. *See* Tex. R. App. P. 47.1 (requiring an opinion "as brief as practicable"); *Gene Hamon Ford, Inc. v. David McDavid Nissan, Inc.*, 997 S.W.2d 298, 304 n.9 (Tex. App.—Austin 1999, pet. denied) (consolidating points of error for discussion); *Niess v. State*, Nos. 03-11-00213-CR, 03-11-00214-CR, 03-11-00215-CR, 03-11-00216-CR, 03-11-00217-CR, 2012 WL 2383300, at *1 (Tex. App.—Austin June 21, 2012, no pet.) (mem. op.) (not designated for publication) ("Though Niess raises these arguments in thirteen separate points of error, for convenience we have grouped the points of error into four legal issues on appeal.").

is not an accurate characterization of the record. Martin brought a cell phone with her to the stand and then testified that it is her phone, that the children had it with them while they stayed with their dad, that she found the photo on the phone when they returned, and that certain timestamp and geolocation data confirm the photo was taken in Gordon's house. The presiding judge did not ask Martin to authenticate the contents of the photo. Instead, the court explained that he would confer with the two girls in chambers to authenticate the photo and find out more about the circumstances that led them to take it. Gordon complains that there is no proof that the girls authenticated the photo in chambers because no record was taken. However, the photo is cumulative of other evidence of drug use, so any error in the admission of exhibit #1 would have been harmless and not reversable on appeal. *See* Tex. R. App. P. 44.1. We overrule the issue.

**Evidentiary Sufficiency and Reasonableness of Court's Decision**

In his second issue, Gordon complains of eight of the court's fifteen findings of fact, arguing that they are "not supported by the evidence" and "arbitrary." "[L]egal and factual sufficiency challenges to the evidence are not independent grounds of error, but are relevant factors in assessing whether the trial court abused its discretion." *Zeifman*, 212 S.W.3d at 587 (citing *In re D.M.*, 191 S.W.3d 381, 393 (Tex. App.—Austin 2006, pet. denied)). "The traditional sufficiency review comes into play . . . however, the inquiry does not end there." *Id.* at 588 (citing *Echols v. Olivarez*, 85 S.W.3d 475, 478 (Tex. App.—Austin 2002, no pet.)). "The appellate court then proceeds to determine whether, based on the evidence, the trial court made a reasonable decision, that is, that the court's decision was neither arbitrary nor unreasonable." *Id.* "When an appellant attacks the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof, the appellant must demonstrate on appeal that there is no

7

evidence to support the adverse finding." *Id.* (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)). "When an appellant attacks the factual sufficiency of an adverse finding on an issue on which he did not have the burden of proof, the appellant must demonstrate the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust." *Id*. at 589 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)).

*Evidentiary Sufficiency*

Gordon challenges the evidentiary support for the following findings:

- Finding 1: [Gordon] through counsel admitted to a prior history of methamphetamine.

Gordon observes that it was he himself, and not counsel, that attested to the history of drug abuse. In fact, both he and his attorney referred to his history of drug use, which was uncontroverted below. Thus, the record supports the finding.

- Finding 2: Part of the evidence were prior court orders wherein [Gordon] was ordered to submit to drug testing and as of the final trial, no nail[-]follicle drug[-]testing results were provided and [Gordon's] previous testimony and rationale for his refusal to provide a drug test was not credible.

Gordon complains that drug testing was merely optional. That characterization is refuted by the record. The court's order of August 2, 2018, unambiguously required Gordon "to submit to a nail[-]follicle ten[-]panel drug test" "by 3:00 p.m. today." It is undisputed that Gordon never provided any testing results to the court. The finding is therefore supported by the record.

- Finding 3: [Gordon] admitted to leaving the children in the home unsupervised and this was consistent with the other testimony.

Gordon complains of this finding, explaining that "leaving two 12-year-old kids to watch a 7-year-old is proper with the age requirements for babysitting in this state." Setting aside the

8

veracity of that statement, Gordon has not shown how this finding is unsupported by the evidence. To the contrary, multiple witnesses testified—and Gordon conceded—that he leaves the children at home alone or unsupervised while he and his girlfriend lock themselves in the bedroom. The record thus provides sufficient support for this finding.

- Finding 4: The Court met with the children in chambers and the court found them credible and then verified that they found a suspicious substance in [Gordon's] house while they were home unsupervised and they took a photo of the item.

- Finding 5: There was evidence that the children took a photograph of the suspicious evidence that appeared to be an illegal substance, namely methamphetamine, and the proof was that the picture was taken while in [Gordon's] home.

Gordon complains, "[N]o Record of the meeting was taken and the children never testified so this is Hearsay." He further laments, "No person with personal knowledge of the picture testified and the only circumstantial evidence given was a GPS screen shoot [sic]." We disposed of these arguments in our earlier discussion of the admission of the photograph.

- Finding 10: [Gordon] was not involved in the children's counseling with Dr. Martin Eichler regarding the drug issue that resulted in this lawsuit.

Gordon objects to this finding, observing that he attended two sessions. The court, however, had ordered Gordon to participate in at least six sessions. So while the evidence supports Gordon's interpretation that he was "involved" through his partial participation, the court's finding to the contrary is also supported by this record and is neither arbitrary nor manifestly unjust. *See Zeifman*, 212 S.W.3d at 588.

### *Reasonableness of Decisions*

In his challenge to Findings 12 and 13, Gordon disputes the reasonableness of the court's ultimate conclusions regarding access to the children:

9

- Finding 13: The court finds that the minimal counseling and drug testing requirements are in the child's [sic] best interest.

Gordon characterizes the counseling and testing requirements as "unreasonable" and "unsupported by any statute or guiding principle" and therefore an abuse of discretion. But the judge's decision to require counseling and testing is reasonable on this record, which includes Gordon's concessions of a history of drug use and a current pattern of leaving the children unattended for long periods of time, along with the children's reports of the unusual behavior within the home. Other courts have found similar measures to be in a child's best interest when there exists a documented history of drug use. *See, e.g.*, *J.A.S. v. A.R.D.*, No. 02-17-00403-CV, 2019 WL 238118, at *2 (Tex. App.—Fort Worth Jan. 17, 2019, no pet.) (mem. op.) (referring to trial court's conclusion that "step-up access" contingent on results of drug testing is in child's best interest); *White v. Mapel*, No. 01-95-01125-CV, 1996 WL 496908, at *3 (Tex. App.—Houston [1st Dist.] Aug. 29, 1996, no writ) (affirming final decree, including provision declaring drug testing in child's best interest); *cf. Newell v. Newell*, 349 S.W.3d 717, 721 (Tex. App.—Fort Worth 2011, no pet.) (finding abuse of discretion in lower court's requirement of random alcohol testing as condition of access where "no evidence exist[ed] that [Father] has ever had an alcohol addiction"). We therefore disagree that the court abused its discretion in imposing the access restrictions.

- Finding 12: The variations in the Standard Possession Order were the most minimal restrictions on Gordon's possession and access possible that was also [sic] in the best interest of the children.

Gordon challenges the court's finding that the access restrictions are the least-restrictive measures necessary to protect the best interest of his children. *See* Tex. Fam. Code § 153.193 ("The terms of an order that denies possession of a child to a parent or imposes restrictions or

limitations on a parent's right to possession of or access to a child may not exceed those that are required to protect the best interest of the child."). Gordon did not propose any lesser-restrictive measures to the court below and does not do so here. Nor does he point us to any cases supporting his argument.

Having reviewed this record under the applicable standards, we conclude Gordon has not met his burden to show the challenged findings of fact unsupported by the evidence or unreasonable in light of the evidence before the court. *See Zeifman*, 212 S.W.3d at 587–88. We therefore overrule the issue.

**Medical Expenses**

Gordon contends the court abused its discretion in granting Martin the requested enforcement relief with respect to the children's unpaid medical bills. Specifically, he claims that Martin did not satisfy a "condition precedent" of reimbursement when she failed to timely provide him with records of the expenses. But Martin admitted into evidence a copy of all the records and testified that she had provided Gordon with each record within thirty days of receipt. Gordon disputes Martin's characterization of that timeline. But even so, the trial court did not abuse its discretion by resolving any discrepancy in Martin's favor. *See In re S.E.K.*, 294 S.W.3d 926, 930 (Tex. App.—Dallas 2009, pet. denied) ("[W]e . . . indulge every presumption in favor of the trial court's order" because "[t]he trial court is in the best position to observe the witnesses and their demeanor." (citing *Garner v. Garner*, 200 S.W.3d 303, 306 (Tex. App.—Dallas 2006, no pet.))). We overrule the issue.

**Attorney's Fees**

Gordon's challenge to the award of $5,400 in attorney's fees is not entirely clear. In general, "the court may render judgment for reasonable attorney's fees and expenses and order the judgment and postjudgment interest to be paid directly to an attorney." *See* Tex. Fam. Code § 106.002(a). In this case, Martin's attorney testified that he has practiced law for twenty years and that his customary hourly rate is $300 per hour. He outlined to the court where he had invested his time and his efforts to minimize cost. He further testified that the $5,400 in fees incurred was both reasonable and necessary considering the complexity of the case. Gordon offered no evidence to the contrary. Where a party's evidence on fees is uncontested, a trial court does not abuse its discretion in awarding fees under section 106.002. *See In re A.J.L.*, 108 S.W.3d 414, 423 (Tex. App.—Fort Worth 2003, pet. denied). We overrule Gordon's final issue.

## CONCLUSION

Having found no error or abuse of discretion in the court's Final Modification and Enforcement Order, we affirm that order.

_____

Edward Smith, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed

Filed: April 17, 2020

12